UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| WILLIAM HOLDEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:08 CV 68 DDN |
| ) | |
| LINDA HIRNER, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM**

This action is before the court on the motion of defendants Linda Hirner, Carla Lawson, David Lawson, Barb Powell, and Brian Young for summary judgment. (Doc. 47.) The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 52.) Oral arguments were heard on August 25, 2010.[1]

**I. BACKGROUND**

Plaintiff, William Holden, brought this action against Linda Hirner, Carla Lawson, David Lawson, Barb Powell, Brian Young, Jimmy Shinn, Unknown Robertson, Scott Unknown, Bill Unknown, George Shotick, Peggy Porter, Thomas Reddington, and Judge Robert Clayton, alleging they violated his civil rights under 42 U.S.C. § 1983. (Doc. 1.)

On January 6, 2009, Jimmy Shinn, Unknown Robertson, Bill Unknown, Thomas Reddington, and Judge Robert Clayton were dismissed from the suit without prejudice. (Doc. 7.) On November 4, 2009, this court granted the voluntary dismissal of Peggy Porter and George Shotick. (Docs. 39, 41.) On February 25, 2010, this court granted the voluntary dismissal of Scott Unknown. (Docs. 48, 51.)

According to the complaint, on October 15, 2007, while under pretrial detention in the Protective Custody Pod in Marion County Jail,

---

[1]The court thanks Christopher D. Baucom, Esq., and Jennifer S. Kingston, Esq. for their service as appointed counsel representing plaintiff William Holden in this matter.

three other detainees assaulted Holden. (Doc. 1 at 8, ¶¶ 1-2.) Holden alleges that he suffered numerous injuries stemming from the assault, including pain in his back, legs, knees, ankles, genitals, toes, neck, shoulders, chest, teeth, and mouth. (Doc. 1 at 9-10, ¶ 5.) According to the complaint, Linda Hirner, the Jail Administrator, along with Carla Lawson, David Lawson, Barb Powell, and Brian Young, all officers and employees of Marion County Jail, oversaw and permitted the housing of Holden with violent detainees and denied Holden medical care after the incident. (Doc. 1 at 8-14, ¶¶ 3-4, 6, 9, 11.)

In his complaint, Holden alleges that defendants failed to protect him from the danger posed by other detainees. (Doc. 1 at 8, 16-17, ¶¶ 2, 19(a).) Holden also alleges that defendants showed deliberate indifference to his medical needs after the assault. (Doc. 1 at 10-17, ¶¶ 6-18, 19(b), (c), (d).)

## II. MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment on all claims. (Doc. 47.) Defendants argue that Holden did not face a substantial risk of serious harm by being placed with the other detainees, and that even if there was a substantial risk, defendants were unaware of it. (Doc. 47-1 at 10-11.) Defendants also argue that Holden only complained of suffering from pain, which was treated by the resident medical staff, and did not exhibit any symptoms of an objectively serious medical need. (Id. at 7-8.) Defendants further argue that even if Holden did suffer from a serious medical condition, they were not deliberately indifferent because they took all the available steps to diagnose and treat Holden's injuries. (Id. at 8-9.) In addition, defendants argue that they are entitled to qualified immunity for claims against them in their individual capacity because they did not violate a clearly established constitutional right. (Id. at 6.) Finally, defendants argue that the claims against them in their official capacity are barred due to the lack of a policy or custom which violated Holden's constitutional rights. (Id. at 11-12.)

In response, Holden argues that material facts are in dispute, and thus that summary judgment is inappropriate. (Doc. 62.) Holden argues

that defendants were aware of the high danger of assault against sex offenders by other detainees, and that defendants were recklessly indifferent specifically to the threat posed by another detainee, who assaulted another sex offender before assaulting Holden. (Id. at 6-8.) Holden also argues that his tooth pain was a serious medical need, and that he was repeatedly denied dental care. (Id. at 9-10.) Holden further argues that his claims against defendants in their official capacities are not barred because it was prison policy that subjected him to assault and denied him dental care. (Id. at 10.)

### III.  STATEMENT OF UNDISPUTED FACTS

On August 23, 2007, William Holden was arrested, detained, and placed in the custody of Marion County Jail for failing to report a change of address as a convicted sex offender. (Docs. 47-2 at ¶ 1; 47-9; 62 at 7.)  Holden was a pretrial detainee the majority of the time he was in custody at the Marion County Jail. (Doc. 47-2 at ¶ 2.) Holden was housed in the protective custody pod, which is used to provide protection for inmates who have a greater likelihood of being assaulted by other inmates.[2] Other inmates housed in the protective custody pod included Adrian Jones, Nathan Brown, and Steve Kelso. (Doc. 1 at 8, ¶ 2; Doc. 47-1 at 11.)

On October 15, 2007, a fight erupted between Holden and Jones, Brown, and Kelso. (Doc. 1 at 8, ¶ 2; Doc. 47-2 at ¶ 7.)  Roughly one minute after the fight started, Brian Young, a Marion County Jail employee, discovered and ended the fight. (Doc. 47-5, Young aff. at ¶¶ 5-6.)  After breaking up the fight, Young gave Holden a change of clothes and examined Holden for injuries. (Id. at ¶ 7.)  Young's immediate examination revealed minor swelling of Holden's leg, some bruising, and a small cut and minor abrasion on Holden's lip. (Id.) None of Holden's injuries required stitches, and there was no significant bleeding. (Id. at ¶ 12.)  Holden was not knocked unconscious during the fight. (Id.)  Holden was not bleeding from his

---

[2]The protective custody pod has a glass front, which allows prison personnel to observe certain inmates more closely. (Doc. 47-1 at 10; Doc. 62 at 7.)

gums, and did not have a loose tooth after the fight. (Id. at ¶ 9) Holden walked around without any noticeable difficulty. (Doc. 47-5, Young aff. at ¶ 10; Doc. 47-7, Hirner. aff. at ¶ 5.)

In the hours following the fight, Holden complained of increased pain, locking up and cramping of the neck and shoulders, lower back pain, a loose tooth, dizziness and lightheadedness, and swelling and discoloration on several areas of his body. (Doc. 1 at 10, ¶ 6.) Holden was offered an ice pack for the pain and told to elevate his leg, but refused the ice pack. (Doc. 47-5, Young. aff. at ¶ 11.)

The next day, Peggy Porter, a licensed practical nurse and employee of Marion County Jail, received a Sick Call Request Form from Holden, in which Holden complained of pain. (Doc. 47-11, Porter aff. at ¶ 10(m).) Specifically, Holden complained that a sudden pain shot through his entire lower back and inner right leg up to his groin. (Id.) Holden also complained that his back went out, almost causing him to fall to the floor, and that the pain was spreading to his front side. (Id.) Nurse Porter examined Holden, at which time Nurse Porter evaluated Holden's vital signs, head, ears, nose, throat, lungs, heart, and musculoskeletal system, all of which were normal. (Id.) Accordingly, Nurse Porter directed Holden to use an ice pack, rest his right leg and back, and take ibuprofen for five days. (Id.)

On October 21, 2007 and October 23, 2007, Holden complained of pain. (Doc. 47-9 at 44; Doc. 47-11, Porter aff. at ¶ 10(n).) The next day, an examination revealed a right knee contusion and sprain. (Doc. 47-11, Porter aff. at ¶ 10(n)) He was given Ibuprofen for seven days, and directed to refrain from activities that would strain his knee, such as lifting. (Id.)

In the months following the assault, Holden made multiple complaints of pain, received medical attention and ibuprofen, and was observed walking without any noticeable pain or discomfort. (Doc. 47-2 at ¶¶ 17, 19-20; Doc. 47-11, Porter aff. at ¶¶ 10(q)-(pp), 11.)

Holden also made multiple complaints about an ache in his lower front tooth. (Doc. 47-11, Porter aff. at ¶ 10(p).) Along with his other complaints of pain, Holden sought dental treatment on October 23, 2007, for pain in his lower front tooth. (Doc. 47-9 at 36.) Holden

sought dental treatment for his tooth pain again on October 28, 2007, and November 4, 2007. (Id. at 38, 40.) In response, Nurse Porter told Holden multiple times that Marion County Jail did not have a dentist, and could only treat the symptoms of toothache. (Id. at 40; Doc. 47-11, Porter aff. at ¶ 10(p).) When given the opportunity to have a dentist extract the damaged tooth on June 20, 2008, Holden refused. (Doc. 66-1 at 1.) The tooth ultimately was extracted on October 13, 2008. (Doc. 62-8, Ex. H.)

Throughout his remaining time at Marion County Jail after the fight, Holden changed cells, and was not placed with Jones, Brown, or Kelso again. (Doc. 47-5, Young. aff. at ¶ 14.) On April 29, 2008, Holden was transferred from Marion County Jail to the Department of Corrections. (Doc. 1 at 16, ¶ 18.)

### IV. MOTION FOR SUMMARY JUDGMENT STANDARD

Summary judgment must be granted when the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986); Devin v. Schwan's Home Serv., Inc., 491 F.3d 778, 785 (8th Cir. 2007). The court must view the evidence in the light most favorable to the nonmoving party and accord it the benefit of all reasonable inferences. Devin, 491 F.3d at 785. A fact is "material" if it could affect the ultimate disposition of the case, and a factual dispute is "genuine" if there is substantial evidence to support a reasonable jury verdict in favor of the non-moving party. Die-Cutting Diversified, Inc. v. United Nat'l Ins. Co., 353 F. Supp. 2d 1053, 1054-55 (E.D. Mo. 2004).

Initially, the moving party must demonstrate the absence of an issue for trial. Celotex, 477 U.S. at 323. Once a motion is properly made and supported, the nonmoving party may not rest upon the allegations in its pleadings or in general denials of the movant's assertions, but must instead proffer admissible evidence that demonstrates a genuine issue of material fact. Fed. R. Civ. P. 56(e); Howard v. Columbia Pub. Sch. Dist., 363 F.3d 797, 800 (8th Cir. 2004); Krein v. DBA Corp., 327 F.3d 723, 726 (8th Cir. 2003); Essex Ins. Co.

v. Stone, No. 1:09 cv 1 SNLJ, 2010 WL 330328, at *2 (E.D.Mo. Jan. 21, 2010).

## **V. DISCUSSION**

Section 1983 provides a civil cause of action against any person who, under color of state law, causes a deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States. 42 U.S.C. § 1983; McRaven v. Sanders, 577 F.3d 974, 979 (8th Cir. 2009).

**A. Failure to Protect**

Prison officials have an Eighth Amendment duty to "provide humane conditions of confinement." Farmer v. Brennan, 511 U.S. 825, 832 (1994). To fulfill that duty, prison officials must "take reasonable measures to guarantee the safety of the inmates," which include "protect[ing] prisoners from violence at the hands of other prisoners." Id. This is because "being subjected to violent assaults is not 'part of the penalty that criminal offenders pay for their offenses . . . .'" Jensen v. Clarke, 94 F.3d 1191, 1197 (8th Cir. 1996) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

To establish a claim of failure to protect, a plaintiff must prove two things: First, the plaintiff must prove that he or she was "incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834. This is an objective requirement which "ensures that the deprivation is sufficiently serious to amount to a deprivation of constitutional dimension." Jensen, 94 F.3d at 1197. Second, the plaintiff must show that the prison official had a state of mind that was one of "deliberate indifference" to inmate health or safety. Farmer, 511 U.S. at 834. This is a subjective requirement, which mandates that the plaintiff prove that the prison official both knew of and disregarded "an excessive risk to inmate health or safety." Id. at 837.

Holden argues that defendants failed to protect him from other detainees. (Doc. 1 at 8-9, ¶¶ 2-4.) Holden argues that defendants were aware of the danger sex offenders face in prison, and failed to take

necessary precautions.  (Id.)  More specifically, Holden argues that after Adrian Jones assaulted another detainee, defendants should have, but failed to, move Holden away from Jones.  (Id.)  Defendants argue that they were unaware of any substantial risk posed by the other detainees specifically to Holden.  (Doc. 47-1 at 10-11.)  Defendants also argue that they took all available reasonable steps to protect Holden from any violence.  (Id.)

Holden cites cases from the Tenth Circuit for the proposition that child molesters face substantial risks of serious harm while imprisoned. (Doc. 62 at 6-7.)  See, e.g., Brown v. Narvais, No. CIV-06-228-F, 2009 WL 736674, at *4 (W.D. Okla. Mar. 17, 2009) (recognizing that "it is well known that convicted child molesters may be in danger in a general prison population") (internal quotations omitted).  However, Holden was not in the general prison population when the assault occurred.  (Doc. 1 at 8, ¶ 1.)  Rather, Holden was placed in the protective custody pod, which is used to provide protection for those inmates who have a greater likelihood of being assaulted by other inmates.

Thus, even if Holden would have faced a "substantial risk of serious harm" in the general prison population, defendants protected Holden by placing him in the protective custody pod.  Holden points to defendants' affidavits to show that they knew of the dangers sex offenders faced in the general prison population.  (Doc. 62 at 8; Doc. 62, Ex. A-E.)  However, whether or not Holden would have been in danger in the general prison population is irrelevant.  In sum, Holden did not face a "substantial risk of serious harm" while in the protective custody pod solely because he was a sex offender.

Holden has also failed to proffer any evidence that defendants knew Adrian Jones assaulted another inmate four days prior to assaulting Holden and why Jones committed the earlier assault.  The only evidence Holden has submitted to show defendants' knowledge is an incident report.  (Doc. 62, Ex. F.)  The incident report, written by Officer Anna, only states that Officer Anna observed Jones hitting another inmate, William Hopkins, because Hopkins refused to say what his charges were.  (Id.)  The report does not state that Hopkins was a sex offender, or that Jones assaulted him because he was a sex offender.  (Id.)

Holden has not proffered any evidence that any defendants were aware of motivation for the assault. Defendants have produced affidavits supporting their contention that they had no knowledge of any specific danger posed to Holden by Jones while in the protective custody pod. (Doc. 47-3, C. Lawson aff. at ¶ 10; Doc. 47-4, D. Lawson aff. at ¶ 5; Doc. 47-5, Young aff. at ¶ 8; Doc. 47-6, Powell aff. at ¶ 7; Doc. 47-7, Hirner aff. at ¶ 7.) Therefore, because Holden has not shown that he faced a substantial risk of serious harm in the protective custody pod, Holden has failed to satisfy the first element of his failure to protect claim.

Even if Holden did face a "substantial risk of serious harm" while in the protective custody pod, Holden has failed to produce any evidence showing defendants were deliberately indifferent to the danger. Holden has not proffered any evidence that any defendant had knowledge of the danger Jones posed to Holden, nor any evidence that any defendant deliberately chose to ignore the danger. (Id.) As discussed above, defendants took reasonable, routine precautions by placing Holden in the protective custody pod for additional safety and greater observation. (Doc. 1 at 8, ¶ 1, Doc. 62, Ex. A-E.) Thus, because Holden has neither submitted any evidence showing that defendants actually knew the details of, nor that they consciously ignored, the danger posed by Jones, Holden failed to satisfy the second element of his failure to protect claim.

Furthermore, defendants cite Norman v. Schuetzle, 585 F.3d 1097 (8th Cir. 2009), where the Eighth Circuit held that an inmate's history of violence alone was insufficient to impute to prison officials subjective knowledge of the inmate's danger to all other inmates. The court reasoned that while a fact-finder could determine that a prison official knew of a substantial risk because the risk was obvious, "the fact remains that the prison official must still draw the inference." Id. at 1105. The court also held that a prison official who learned, two weeks prior to the assault, that someone was looking to hire an inmate to assault the victim was not liable because that information alone was insufficient to establish subjective knowledge of danger and that preventative measures could have been taken but were not. Id. at 1107-08.

As discussed above, here, like the victim-inmate in Norman, Holden has not proffered any evidence that defendants were subjectively aware of the risk posed by Jones. Even though defendants released Jones from segregation only days after he assaulted another inmate, Norman recognized that prison officials need not indefinitely segregate all inmates who engage in violence while incarcerated. Id. at 1105. Courts "must give substantial deference to prison officials to determine the best methods for dealing with dangerous inmates in the volatile environment that is prison life." Id. Placing Holden and Jones in the protective custody pod, which provided greater supervision and protection, was a logical means of preventing violence. Id. at 1105-07.

Therefore, summary judgment is appropriate on Holden's failure to protect claim.

**B. Deliberate Indifference to a Serious Medical Condition**

"Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." McRaven, 577 F.3d at 979 (quotations omitted). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. (quoting Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)). Deliberate indifference to a prisoner's medical needs is actionable under Section 1983. McRaven, 577 F.3d at 979.

Pretrial detainee § 1983 claims are analyzed under the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment prohibition against cruel and unusual punishment. Kahle v. Leonard, 477 F.3d 544, 550 (8th Cir. 2007), cert. denied, 552 U.S. 826 (2007). "This makes little difference as a practical matter, though: Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment." Id. at 979-80.

To prevail on a deliberate indifference claim, a plaintiff must show "(1) he suffered from an objectively serious medical need, and (2)

defendants knew of the need yet deliberately disregarded it." Hartsfield v. Colburn, 371 F.3d 454, 457 (8th Cir. 2004). A serious medical need is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997). To prevail, a plaintiff must establish that the defendant acted with a level of culpability equal to criminal recklessness. Jenkins v. Cnty. of Hennepin, 557 F.3d 628, 632 (8th Cir. 2009).

Although Holden alleged in his complaint deliberate indifference arising out of the medical care given to all of his injuries, in his response to defendants' Motion for Summary Judgment, Holden only responds to and proffers evidence in support of his tooth pain. (Doc. 62 at 9-10.) Defendants have submitted multiple affidavits and Holden's medical file to rebut any possible claims arising out of the medical care given to Holden beyond that relating to his tooth. (Docs. 47-3, 47-4, 47-5, 47-6, 47-7, 47-9.) In addition, Holden did not include any relevant medical-related facts in his own statement of uncontroverted material facts. (Doc. 62 at 4-5.)

Therefore, summary judgment is appropriate on the deliberate indifference claim arising out of injuries not relating to Holden's tooth pain. See Morlock v. West Cent. Educ. Dist., 46 F. Supp. 2d 892, 924 (D. Minn. 1999) (granting summary judgment for defendants on claims raised in plaintiffs complaint but not argued by plaintiff in her opposition to summary judgment brief).

Holden alleges that his tooth pain was a serious medical need, and that defendants were deliberately indifferent to it. (Doc. 62 at 9-10.) An inmate's complaints of dental pain can be a serious medical need. McAlphin v. Toney, 281 F.3d 709, 711 (8th Cir. 2002) (plaintiff who had five tooth extractions, needed two more, and had an infection spreading in his mouth had shown serious medical need for dental care); Hartsfield, 491 F.3d at 397 (8th Cir. 2007) (plaintiff who "suffered extreme pain from loose and infected teeth, which caused blood to seep from his gums, swelling, and difficulty sleeping and eating" had a serious medical need for dental care); Boyd v. Knox, 47 F.3d 966, 969

(8th Cir. 1995) (holding that "[a] three-week delay in dental care, coupled with knowledge of the inmate-patient's suffering, can support a finding of an Eighth Amendment violation under section 1983").

Viewing the evidence in the light most favorable to the plaintiff, Holden has failed to show that defendants were deliberately indifferent to his tooth pain. The Supreme Court has explained that for liability to attach to a prison official in a deliberate indifference claim, "the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Holden has not proffered any evidence that any of the remaining defendants were actually aware of or responsible for his dental care. The only relevant evidence indicates that none of the defendants were aware of any serious injuries Holden might have had, (Docs. 47-3, 47-4, 47-5, 47-6, 47-7, 47-9), and that defendants complied with Holden's requests to courier his Sick Call Request Forms to Nurse Porter. (Doc. 66-1, Young depo. at 31-34; Doc. 66-1, D. Lawson depo. at 13-14; Doc. 66-1, C. Lawson depo. at 17-18.) Defendants fulfilled their duties in this regard, and cannot be held liable for the diagnostic decisions of the medical staff regarding Holden's dental care, as defendants lacked medical expertise.[3] Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995) ("Moreover, because [the defendants] lacked medical expertise, they cannot be held liable for the medical staff's diagnostic decision not to refer [the inmate] to a doctor to treat his shoulder injury."). See also Box v. Dwyer, No. 1:05CV6 HEA, 2006 WL 2850528, at *2 (E.D. Mo. Sept. 29, 2006) ("Standing alone, [evidence that the defendant signed the inmate's grievance form] is insufficient to establish that defendant was aware of plaintiff's medical needs and deliberately disregarded those needs; defendant, an individual with no medical training, is entitled to rely on the medical decisions of medical personnel.").

---

[3]Nurse Peggy Porter and Dr. George Shotick, the Marion County Jail medical staff members who diagnosed and treated Holden, were originally named as defendants in this suit, but this court granted Holden's motion to voluntarily dismiss Nurse Porter and Dr. Shotick on November 4, 2009. (Docs. 39, 41.)

In addition, although Holden complained of tooth pain on October 23, October 28, and November 4, 2007, (Doc. 47-9 at 36, 38, 40), Nurse Porter told Holden that Marion County Jail did not have a dentist, and could only treat the pain. (Id. at 40; Doc. 47-11, Porter aff. at ¶ 10(p).) When the opportunity arose on June 20, 2008 to have the tooth extracted, Holden refused. (Doc. 66-1 at 1.) Refusing medical treatment can undermine an inmate's claim of deliberate indifference. See Logan v. Clarke, 119 F.3d 647, 649-50 (8th Cir. 1997) (holding that a prison's offer of pain treatment, even though the inmate refused, "demonstrate[d] the doctors were not consciously disregarding [plaintiff's] need."); Williams v. Chandler, No. 4:05CV00661 ERW, 2006 WL 2795382, at *7 (E.D. Mo. Sept. 27, 2006) (holding that a plaintiffs "refusal of medical evaluations and treatment made available to him" supported summary judgment against the plaintiff). Here, all available steps were taken to relieve Holden's tooth pain and when given the opportunity to completely rid himself of the pain via tooth extraction, Holden refused.

Summary judgment is therefore appropriate on Holden's deliberate indifference claim.

**C. Qualified Immunity**

Defendants argue that they are entitled to qualified immunity because Holden cannot establish the violation of a clearly established constitutional right. (Doc. 47-1 at 6.)

"Qualified immunity shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Crow v. Montgomery, 403 F.3d 598, 601 (8th Cir. 2005) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity may be invoked by a public official being sued in his or her individual capacity. Serna v. Goodno, 567 F.3d 944, 952 (8th Cir. 2009). Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." McRaven, 577 F.3d at 979 (internal quotations omitted).

To overcome the defense of qualified immunity, a plaintiff must prove that (1) the facts, viewed in a light most favorable to the plaintiff, show a deprivation of a constitutional right, and (2) the right was clearly established at the time of the deprivation. Vaughn v. Gray, 557 F.3d 904, 908 (8th Cir. 2009).

As discussed above, even when viewed in the light most favorable to the plaintiff, Holden has failed to establish a deprivation of his constitutional rights.[4] As such, defendants are entitled to qualified immunity.

**D. Official Capacities**

A suit against an individual in his or her official capacity is treated as a suit against the entity that employs the individual. Hafer v. Melo, 502 U.S. 21, 25 (1991). See also Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). A municipality cannot be held vicariously liable under Section 1983 for the actions of its agents. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). Thus, to succeed in an official-capacity suit, the plaintiff must show that the entity's policy or custom caused his or her injury. Id. at 694.

---

[4]The court notes that both a pretrial detainee's right to medical care and right to protection from violence from other inmates are clearly established. Boswell v. Sherburne County, 849 F.2d 1117, 1121 (8th Cir. 1988) (medical care); Foulks v. Cole Cnty., 991 F.2d 454, 456-57 (8th Cir. 1993) (medical care); Miller v. Schoenen, 75 F.3d 1305, 1308 (8th Cir. 1996) (protection from violence from other inmates). However, because Holden has not proffered any evidence of suffering a deprivation of a constitutional right, defendants are entitled to qualified immunity. See Bradford v. Huckabee, 394 F.3d 1012, 1015 (8th Cir. 2005) ("The better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all."); Abdouch v. Burger, 426 F.3d 982, 987 (8th Cir. 2005) ("In the present case, we need not reach this second step of the qualified immunity analysis because we conclude that the defendants' conduct, viewed in a light most favorable to the plaintiff, did not violate a constitutional right.").

A policy is an "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." Bechtel v. City of Belton, 250 F.3d 1157, 1160 (8th Cir. 2001). To be actionable, the policy must have been the "moving force of the constitutional violation." Monell, 436 U.S. at 694.

A custom involves "a pattern of persistent and widespread practices which become so permanent and well settled as to have the effect and force of law." Brockinton v. City of Sherwood, 503 F.3d 667, 674 (8th Cir. 2007) (internal quotations omitted). To establish a custom, a plaintiff must proffer evidence of a "continuing, widespread, persistent pattern of unconstitutional misconduct," along with evidence that either "policymakers were deliberately indifferent to the misconduct or that they tacitly authorized it." Jenkins, 557 F.3d at 634 (8th Cir. 2009) (internal quotations omitted).

As discussed above, defendants are entitled to summary judgment on both claims against them in their individual capacities, because Holden has failed to show a constitutional violation. Because Holden has failed to show legally sufficient evidence that he was deprived of any of his constitutional rights, his claims against defendants in their official capacities also fail.

## VI. MOTION TO STRIKE

Holden moves to strike all references to defendants' requests for admission made in defendants' memoranda in support of summary judgment. (Doc. 68.) The court considered defendants' motion for summary judgment without the use of the disputed requests for admissions and nevertheless found summary judgment appropriate for defendants. Therefore, Holden's motion to strike is moot.

## VII. CONCLUSION

An appropriate judgment order is issued herewith denying as moot the motion of plaintiff to strike defendants' citation to requests for admission (Doc. 68) and sustaining the motion of defendants for summary judgment (Doc. 47).

/S/   David D. Noce
                                    **UNITED STATES MAGISTRATE JUDGE**

Signed on September 7, 2010.